

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BIGHORN CAPITAL INC., et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 05 C 5364 |
| 1000 SMA, LLC., et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiffs Bighorn Capital, Inc., ("Bighorn"), Moody Group International, Ltd, and Moody Investment Company, ("Moody"), (collectively "plaintiffs"), invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, filed a first amended complaint on October 21, 2005 against defendants 1000 SMA, LLC, 1000 South Michigan Avenue, LLC, ("1000 South Michigan"), Chicago Title Land Trust Company ("Chicago Title"), and Guy Gardner ("Gardner"), (collectively "defendants"). (Dkt. No. 17). Defendants filed the pending motion on October 19, 2005, and supplemented the motion on October 26, 2005, seeking the cancellation of the *lis pendens*. (Dkt. Nos. 14, 18). For the reasons set forth below, the defendants' motion to cancel the *lis pendens* is denied.

## BACKGROUND

This case centers around a condominium development planned for the property at 1000 South Michigan Avenue in Chicago, Illinois. Bighorn is a real estate finance firm and Moody is a consulting firm working with Bighorn. (Dkt. No. 17 at ¶¶ 9-10). Bighorn is in the business of securing financing commitments from third party lenders for commercial real estate

developments. (*Id.* at ¶ 9). Chicago Title's only involvement in this case is that it holds the property at 1000 South Michigan Avenue and the air rights for the property at 1006 South Michigan Avenue in a land trust, otherwise the plaintiffs make no allegations of wrongdoing against Chicago Title. (*Id.* at ¶¶ 5, 11). The defendants, who are real estate developers and are the sole beneficiary to the land trust, (*Id.* at ¶ 12), obtained financing for the 1000 South Michigan Avenue project through the plaintiffs. (*Id.* at ¶ 20).

In order to facilitate the financing, the defendants provided Bighorn with an appraisal of the value of the property. (*Id.* at ¶ 15). The plaintiffs allege that the defendants knew that Bighorn and other third parties would rely on the appraisal for locating, securing and pricing financing for the condominium project (*Id.* at ¶ 15), and the plaintiffs did in fact reasonably rely on the appraisal. (*Id.* at ¶ 18). The plaintiffs allege that the defendants' appraisal falsely overstated the true value of the property. (*Id.* at ¶ 17). According to the plaintiffs, the true value of the property is $22,000,000 for the 1000 South Michigan Avenue property plus $1,000,000 for the air rights over 1006 South Michigan Avenue. (*Id.* at ¶ 26). According to the plaintiffs, the defendants' false appraisal improperly stated the value of 1000 South Michigan Avenue as $45,235,000 and the air rights over 1006 South Michigan Avenue as $3,000,000. The plaintiffs allege that the parties had already entered into the loan agreement before the plaintiffs learned about the overstated false values in the appraisal. (*Id.* at ¶ 26). They also allege that the defendants never secured the air rights to 1006 South Michigan Avenue even though they had represented they had in the loan agreement. (*Id.* at ¶ 27).

The plaintiffs further allege they attempted to work with the defendants to reform the loan agreement in order to reflect the true economic reality of the transaction, "so that the parties

2

could secure the benefits of the bargain they had made." (*Id.* at ¶ 30). The plaintiffs allege that defendants "have refused to [conform the agreement] in order to escape from their obligations [under the original agreement] so that they would be free to either enter into a new loan commitment or sell the property to a third party on more favorable terms." (*Id.* at ¶ 31). The defendants have allegedly entered into an agreement with a third party to sell the property with closing occurring in the month of November 2005. (*Id.* at ¶ 32). The plaintiffs' first amended complaint seeks the equitable relief of: (1) reformation of the loan contract, (2) specific performance of the reformed loan contract, (3) an injunction or, (4) in the alternative, monetary remedies for the breach of contract and fraud.

The original complaint in this case was filed with the court on September 16, 2005. (Dkt. No. 1). On the same day, the plaintiffs' recorded a *lis pendens* notice on the 1000 South Michigan Avenue property with the Cook County Record of Deeds. (Dkt. No. 14 at Ex. A). The defendants filed a motion to dismiss on September 30, 2005 in this court and a briefing schedule was set on the motion on October 13, 2005. (Dkt. No. 6, 11). However, this court *sua sponte* issued a minute order on October 3, 2005 ordering the plaintiffs to file an amended complaint including a jurisdictional statement detailing the citizenship of the defendant LLCs in order to insure that this court possessed subject matter jurisdiction in this matter.[1] (Dkt. No. 10). The defendant then filed the present motion to cancel *lis pendens* on October 19, 2005 and the

---

[1] The filing of an amended complaint was required because the plaintiffs' original complaint failed to detail the citizenship of the defendant LLC's members. The Seventh Circuit has instructed that "[u]nincorporated enterprises are analogized to partnerships, which take the citizenship of every general and limited partner. ... [L]imited liability companies are citizens of every state of which any member is a citizen." *Belleville Catering Co v. Champaign Market Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003) (internal citations omitted).

3

supplement on October 26, 2005. (Dkt. No. 18). The parties have proceeded on an expedited briefing schedule on the *lis pendens* motion in light of the defendants' desire to proceed with the sale of the property. (Dkt. No. 14 at ¶ 6). This matter was fully briefed on November 3, 2005.

## ANAYLSIS

The defendants argue that plaintiffs' filing of this lawsuit and their recording of the *lis pendens* notice are solely for the purpose of tying this matter up in litigation so as to prevent the defendants' sale of the property. (Dkt. No. 18 at ¶ 2 n.1). The defendants seek an order from this court cancelling the *lis pendens* notice arguing that: (1) the plaintiffs cannot record a *lis pendens* notice since the loan transaction in this case did not transfer an interest in real estate, (2) the plaintiff has an adequate remedy in law, and (3) the plaintiffs legal claims in this case are incorrect under Illinois law and therefore they cannot succeed in this case. The defendants seek a "quick resolution of this issue ... because defendants have in hand an agreement to sell the real estate, which agreement calls for a closing between November 8 and November 21, 2005." (*Id.*)

"'*Lis pendens*' means a pending suit. Under the *lis pendens* doctrine anyone who purchased or otherwise acquired an interest in property involved in litigation took such interest subject to the outcome of the litigation." *United States v. First Midwest Bank/Illinois, N.A.*, No. 97 C 7365, 1997 WL 675192, at *19 (N.D. Ill. Oct. 28, 1997) (quoting *Admiral Builders Corp. v. Robert Hall Vill.*, 427 N.E.2d 1032, 1035 (Ill. App. Ct. 1981)); *see, e.g.*, *First Midwest, A Div. of Jacksonville Sav. Bank v. Pogge*, 687 N.E.2d 1195, 1198 (Ill. App. Ct. 1997) (citing *E&E Hauling, Inc. v. County of DuPage*, 396 N.E.2d 1260, 1265 (Ill. App. Ct. 1979)) ("Under the doctrine of *lis pendens*, one who obtains an interest in property during the pendency of a suit affecting it is bound to the result of that litigation as if he had been a party from the outset."). "A

4

*lis pendens* is not an injunction as it does not formally restrain sale, conveyance or purchase." *Id.* (citing *E&E Hauling, Inc.*, 396 N.E.2d at 1266)).

Under Illinois law[2], a party to a lawsuit may file a *lis pendens* notice in "every condemnation proceeding, proceeding to sell real estate of decedent to pay debts, or other action seeking equitable relief, affecting or involving real estate." 735 ILCS 5/2-1901. The effect of a properly filed *lis pendens* notice is to give "constructive notice to every person subsequently acquiring an interest in or lien on the property affected thereby, and every such person acquiring an interest or lien ... not in possession of the property and whose interest or lien is not shown of record at the time of filing such notice, shall, ... be deemed a subsequent purchaser and shall be bound by the proceedings to the same extent and in the same manner as if he or she were a party thereof." *Id.*

"The doctrine of *lis pendens* as codified serves to: (1) avoid endless litigation of property rights precipitated by transfers of interests; (2) protect parties to the litigation from persons who acquire an interest in the subject matter of the litigation during the pendency of litigation such as would preclude the court from granting the relief requested; and (3) protect purchasers by giving them notice that the land which they are buying might be affected by a judgment entered in a pending suit by which they could be bound." *Knodle v. Jeffrey*, 545 N.E.2d 1017, 1022 (Ill. App. Ct. 1989) (citing *Admiral Builders Corp. v. Robert Hall Vill.*, 427 N.E.2d 1032, 1035 (Ill. App. Ct. 1981)).

---

[2] "State law governs the creation and cancellation of *lis pendens* in both federal and state courts." *Duncan v. Farm Credit Bank of St. Louis*, 940 F.2d 1099, 1101 (7th Cir. 1991) (citing *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1153 (5th Cir. 1988); *Hamilton v. Smith*, 808 F.2d 36, 37 (10th Cir. 1986); *Knodle v. Jeffrey*, 545 N.E.2d 1017, 1021 (Ill. App. Ct. 1989)).

"For the doctrine to be applicable, three requirements must be satisfied: (1) the property must be of such a character as to be subject to the rule, (2) the court must have jurisdiction both 'of the person and of the *res*," and (3) the property involved must be sufficiently described in the pleadings." *First Midwest, A Div. of Jacksonville Sav. Bank v. Pogge*, 687 N.E.2d 1195, 1198 (Ill. App. Ct. 1997) (citation omitted). The doctrine of *"lis pendens* may apply to *any* proceeding. ... It is the existence of the suit itself, not the probabilities of success, which invokes the principle of *lis pendens.*" *Id.* at 1999 (emphasis in original) (citations omitted).

In the present action, the plaintiffs have properly recorded their *lis pendens* notice under the statute. *See* 735 ILCS 5/2-1901. The notice was properly filed in the Cook County Recorder of Deeds office, signed by the plaintiffs' attorney on the plaintiffs' behalf, set forth the title of the action, the parties, the court where the case is being brought and the description of the real estate involved. Additionally, the doctrine of *lis pendens* applies in this case because (1) the plaintiffs' complaint seeks equitable relief in matter involving real estate, (2) this court has both jurisdiction over both the persons and *res* involved in this matter, and (3) the involved property has been sufficiently described in the pleadings.

Now that the court has determined that the plaintiffs have properly filed their *lis pendens* notice under Illinois law, this court turns to the defendants arguments for cancelling the notice. This court finds the defendants' arguments unconvincing and must reject them.

The defendants' primary argument is that the plaintiffs are using this lawsuit, and the *lis pendens* notice, to stop their sale of the 1000 South Michigan Avenue property that the defendants hope to close on during the period between November 8 and November 21, 2005. However, a *"lis pendens* is not an injunction as it does not formally restrain sale, conveyance or

purchase." *First Midwest, A Div. of Jacksonville Sav. Bank v. Pogge*, 687 N.E.2d 1195, 1198 (Ill. App. Ct. 1997) (citing *E&E Hauling, Inc. v. County of DuPage*, 396 N.E.2d 1260, 1266 (Ill. App. Ct. 1979)). Instead, the doctrine of *lis pendens* acts to provide notice to subsequent purchasers of this pending litigation and guarantees that these subsequent purchasers will be bound by this court's ultimate decision in this matter. Nothing in the *lis pendens* doctrine precludes the sale from going forward.

The defendants' argument that a *lis pendens* notice is not appropriate because the loan transaction did not transfer an interest in real estate is incorrect for several reasons. First, it appears that the transaction in this case can be interpreted to involve a transfer of a real estate interest. According to the loan commitment, defendant 1000 SMA, LLC, a holding company for the property, was to be transferred with 60% to Moody and 40% to the developer. (Dkt. No. 17 at ¶ 21). Therefore, it appears that the loan transaction involves a transfer of real estate. Regardless, the question of whether a real estate transfer occurred in this case is irrelevant because the doctrine of *lis pendens* may apply to "any proceeding." *First Midwest, A Div. of Jacksonville Sav. Bank v. Pogge*, 687 N.E.2d 1195, 1199 (Ill. App. Ct. 1997). This case involves both real estate and a request for injunctive relief, that is sufficient to implicate the *lis pendens* statute.

The defendants' next argument is that the plaintiffs have an adequate remedy at law and therefore should not be allowed to have a *lis pendens* notice recorded on the property. This argument, however, misunderstands the purpose of a *lis pendens* notice. A *lis pendens* notice is not an injunction forbidding the sale of real estate, but instead seeks to give notice to subsequent purchasers that their rights may be effected by ongoing litigation while also protecting the rights

7

of the parties involved in the current litigation. *See Knodle v. Jeffrey*, 545 N.E.2d 1017, 1022 (Ill. App. Ct. 1989) (citing *Admiral Builders Corp. v. Robert Hall Vill.*, 427 N.E.2d 1032, 1035 (Ill. App. Ct. 1981)).

Lastly, the defendants argue that the plaintiffs' claims are not sufficient as a matter of law and therefore the *lis pendens* notice should be cancelled. (Dkt. No. 18 at pg. 6) ("In the face of such a transparent and baseless effort to use this litigation as a vehicle to upset the defendants' efforts to sell the real estate, this Court should cancel the *lis pendens* notice."). However, as discussed earlier in this opinion, a *lis pendens* notice does not prohibit the sale of the real estate. The court understands that a *lis pendens* notice could impact potential sale negotiations between the defendant and potential third party buyers. However, this court is somewhat skeptical of the defendants' argument that this court's failure to cancel the *lis pendens* notice "would effectively leave defendants with a single negotiating partner - themselves," (Dkt. No. 14 at pg. 4), since the defendants have been able to negotiate a sale to a third party. The third party is given at a minimum constructive notice under the statute of this pending proceeding (and potential actual notice if they have been informed of this proceeding), and therefore the defendants and the third party can easily structure their sale negotiations to consider the probability of whether the plaintiffs will be successful on their claims in this case.

## CONCLUSION

For the reasons set forth above, this court denies the defendants' motion to cancel the *lis pendens* (Dkt. No. 14), of October 19, 2005. The previously established dates of October 27, 2005 remain in effect. (Dkt. No. 19). This case is set for a report on status on November 15, 2005 at 9:00am.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

Date: November 9, 2005